### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

JOHN R. ANDERSON,
    Plaintiff

Case No. 1:09-cv-732
Barrett, J.
Litkovitz, M.J.

vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application

for disability insurance benefits (DIB). This matter is before the Court on plaintiff's Statement of

Errors (Doc. 4), the Commissioner's response in opposition (Doc. 7), and plaintiff's reply

memorandum. (Doc. 8).

### PROCEDURAL BACKGROUND

Plaintiff was born on April 8, 1960 and was 49 years old at the time of the administrative

law judge's (ALJ) decision. Plaintiff filed an application for DIB on August 28, 2006, alleging

an onset date of disability of October 1, 2003, due to carpal tunnel syndrome, back problems,

bipolar disorder and hypertension.[1] (Tr. 145). Plaintiff's application was denied initially and

---

[1] As noted by the Commissioner, plaintiff filed multiple applications for disability insurance
benefits. The record contains his 2003 (Tr. 84-86) and 2004 applications (Tr. 81-83), as well as
documentation referring to his four prior applications for supplemental security income. (Tr. 78-79). The
transcript from the administrative hearing reflects that the ALJ referenced plaintiff's 2006 application for
DIB along with an alleged onset of disability of October 1, 2003. (Tr. 708). Plaintiff was represented by
counsel, who did not object to or correct those dates. (Tr. 708). The ALJ's opinion references a filing
date of August 2006 and an onset of October 1, 2003. (Tr. 10). It appears that August 2006 was the time
that plaintiff filed for reconsideration of the Agency's initial determination that plaintiff was not entitled
to benefits. (Tr. 23). In any event, plaintiff does not refute the ALJ's finding concerning his October 1,
2003 alleged onset of disability. (Tr. 12). However, plaintiff's 2006 application reflecting a 2003 onset

upon reconsideration. Plaintiff then requested and was granted a de novo hearing before an ALJ.
On March 10, 2009, plaintiff, who was represented by counsel, appeared and testified at a
hearing before ALJ Larry A. Temin. (Tr. 706-745). Vocational expert (VE), William Cody, also
appeared and testified at the hearing.

On May 11, 2009, the ALJ issued a decision denying plaintiff's DIB application. The
ALJ determined that plaintiff suffers from the following severe impairments: obesity,
degenerative disc disease of the lumbosacral spine, a major depressive disorder, and an anxiety
disorder. (Tr. 12). The ALJ found that plaintiff's impairments do not meet or equal the level of
severity described in the Listing of Impairments. (Tr. 16). According to the ALJ, plaintiff retains
the residual functional capacity (RFC) to perform the requirements of work activity except as
follows:

> He can lift/carry/push/pull a limit of 20 pounds occasionally and 10 pounds
> frequently. He can stand and/or walk a limit of six hours in an eight hour
> workday. He can never crawl, climb ladders/ropes/scaffolds, operate automotive
> equipment, work at unprotected heights, or work around hazardous machinery.
> He can only occasionally stoop, kneel, crouch, and climb ramps/stairs. He is able
> to perform only simple tasks. He is able to remember and carry out only short and
> simple instructions. He cannot interact with the general public. He cannot
> interact with co-workers or supervisors more than occasionally. The job should
> not require more than ordinary and routine changes in work setting or duties. The
> claimant is able to make only simple work-related decisions. The job should not
> require reading skills above the fourth-grade level. The job should not require
> writing skills above the fourth-grade level. The job should not require math skills
> above the sixth-grade level.

(Tr. 17). The ALJ determined that plaintiff's subjective allegations of disability are less than
credible. (Tr. 18). The ALJ next determined that plaintiff is unable to perform any past relevant
work. (Tr. 19). The ALJ further determined that plaintiff is capable of performing a significant

---

date is not contained in the record on review.

2

number of jobs in the national economy including jobs as an assembler, packer and cleaner. (Tr. 20). Accordingly, the ALJ concluded that plaintiff is not disabled under the Act. (Tr. 20).

Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for disability insurance benefits, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(i), 423. Establishment of a disability is contingent upon two findings. First, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, the impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

3

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Born v. Secretary of Health and Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch v. Richardson*, 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that

4

such employment exists in the national economy. *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999); *Born*, 923 F.2d at 1173; *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978). *See also Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir. 1984) (per curiam). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner*, 587 F.2d at 323. *See also Cole v. Secretary of Health and Human Services*, 820 F.2d 768, 771 (6th Cir. 1987).

It is well established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984) (same); *Lashley v. Secretary of HHS*, 708 F.2d 1048, 1054 (6th Cir. 1983) (same). Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a non-examining medical advisor. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Lashley v. Secretary of H.H.S.,* 708 F.2d 1048, 1054 (6th Cir. 1983). If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

5

inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 1527(d)(2); *see also Blakely v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004)*; Walters*, 127 F.3d at 530. "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

The Social Security regulations likewise recognize the importance of longevity of treatment, providing that treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2). In weighing the various opinions and medical evidence, the ALJ must consider other pertinent factors such as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's supportability by evidence and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6); *Wilson*, 378 F.3d at 544. In terms of a physician's area of specialization, the ALJ must generally give "more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5).

6

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 111 S. Ct. 2157, 2163 (1991).

Where the Commissioner has erroneously determined that an individual is not disabled at steps one through four of the sequential evaluation, remand is often appropriate so that the sequential evaluation may be continued. *DeGrande v. Secretary of H.H.S.*, 892 F.2d 1043 (6th Cir. 1990) (unpublished), 1990 WL 94. Remand is also appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). Remand ordered after a hearing on the merits and in connection with an entry of judgment does not require a finding that the Commissioner had good cause for failure to present evidence at the prior administrative hearing. *Faucher*, 17 F.3d at 173.

Benefits may be immediately awarded "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher,* 17 F.3d at 176. *See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 782 (6th Cir. 1987). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176. *See also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler,* 771 F.2d 966, 973 (6th Cir. 1985).

## MEDICAL EVIDENCE [2]

Plaintiff began receiving treatment for depression and substance abuse issues in 2000. (Tr. 336). Progress notes from Dr. Gerald Price in February 2000 describe plaintiff as a depressed individual who was opiate dependent and has been taking Methadone. (*Id.*) Progress notes from early 2001, indicate that plaintiff's depression was responding well to medication. (Tr. 332-33).

On April 1, 2005, plaintiff was admitted to University Hospital with anxiety, depression and suicidal ideation. (Tr. 511-513). Upon admission it was noted that plaintiff appeared very medication-seeking. He was stabilized and discharged on April 5, 2005 with diagnoses of polysubstance abuse, substance-induced anxiety disorder, benzodiazepine abuse, opiate abuse, rule out bipolar disorder mixed, and antisocial personality disorder. (Tr. 511). He was advised to seek follow-up treatment. (Tr. 513).

A March 2006 discharge summary from Mercy Hospital indicated that plaintiff continued to smoke marijuana and his urine toxicology was positive for marijuana and benzodiazepines. (Tr. 220-21). His diagnostic assessments were bipolar affective disorder, probably substance dependence, and substance induced mood disorder. (Tr. 220).

In July 2006, plaintiff was seen by Dr. Dale Seifert, a consultative psychologist, for an evaluation. (Tr. 293-297). A mental status examination revealed that plaintiff had trouble organizing his thoughts. Plaintiff displayed a flat affect and anxiety. Dr. Seifert diagnosed

---

[2] Plaintiff reported a lengthy history of back pain, as well as a history bilateral carpal tunnel syndrome, hyperthyroidism, hypertension, Hepatitis C, gastroesophageal reflux disease, and asthma. (Tr. 12-13). However, his statement of errors focuses solely on his mental impairments. Therefore, the Court shall limit its recitation of the medical evidence accordingly.

bipolar I disorder, cannabis abuse (reported sober 1 year), and moderate psycho-social stressors. Dr. Seifert assigned plaintiff a GAF score of 65.[3] He found that plaintiff had mild limitations in relating to others, following instructions, and maintaining concentration and attention. (Tr. 297). Dr. Seifert found plaintiff moderately limited in his ability to withstand the stress and pressures associated with day-to-day work activity. *Id.*

Dr. Seifert interviewed and tested plaintiff again on December 12, 2006. (Tr. 204-209). Plaintiff reported having trouble concentrating and focusing. (Tr. 204). He also reported feeling anxious, and occasionally having tremors and panic attacks. (*Id.*). Dr. Seifert diagnosed bipolar I disorder, cannabis abuse (reported sober a few months), and cocaine abuse (reported sober a few months). (Tr. 208). Dr. Seifert opined that plaintiff had mild limitations in relating to others, following instructions, and maintaining attention. (Tr. 209). He again found that plaintiff had moderate limitations in his ability to withstand the stress and pressures associated with day-to-day work activity. (*Id.*).

Plaintiff began individual therapy at the Clermont County Counseling Center in December 2006, with Susannah Coaston, MA, PC, and continued through the date of the ALJ's decision. (Tr. 695). During his intake assessment, plaintiff indicated that he had been clean for two months after a lengthy history of polysubstance abuse. (Tr. 467). Plaintiff's initial diagnostic impressions were anxiety, not otherwise specified; major depressive discover, recurrent, moderate; rule out bipolar disorder; cannabis use in early remission; and cocaine use in early

---

[3] GAF is used to report the clinician's judgment of the individual's overall level of functioning. GAF is divided into functioning ranges and scored on a scale of 0 (an individual is found to be a danger) to 100 (an individual is found to have superior functioning in a wide range of activities). See AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. text rev. 2000) (DSM IV-TR). A GAF score of 65 refers to an individual with "mild" symptoms who is "generally functioning pretty well." *Id.*

remission. (Tr. 468). In conjunction with his therapy sessions, plaintiff also treated with Dr.

Anaya, a psychiatrist at the Counseling Center, who prescribed medication for plaintiff's

depression. Treatment notes from April 2007 indicate that plaintiff had made significant

progress. (Tr. 433). A July 2007 assessment found that plaintiff had improvement in the quality

of his life and empowerment, with decreased symptomatology scores. (Tr. 424). However,

progress notes from February 2008, indicate a mixed response to treatment, with plaintiff

reporting increased anxiety, depression and instability. (Tr. 403). Treatment notes from July

2008 reveal plaintiff was decompensating, describing himself as fragile and presenting as very

depressed. (Tr. 390-91, 394). He was observed to be extremely agitated, rocking and falling

asleep during sessions. (Tr. 391, 394). In August 2008, plaintiff was less depressed and less

restless. (Tr. 387). In October 2008, plaintiff appeared "to be in a lot of pain" and in November

2008, he reported increased suspiciousness and restlessness, in addition to weight gain. (Tr. 380,

383).

On March 2, 2009, Dr. Anaya, provided a Residual Functional Capacity Form wherein he

reported that plaintiff displays generally "good" and "fair mental" abilities. (Tr. 475-477).

However, as a result of plaintiff's depression, Dr. Anaya found that he had "poor" abilities to

deal with work stresses, maintain attention and concentration, and understand, remember and

carry out complex job instructions. (Tr. 475-76). Dr. Anaya reported that due to plaintiff's major

depressive disorder, stressors can make his depressed mood worse, increase feelings of

worthlessness, and increase thoughts of death and dying. (Tr. 475).

Dr. Anaya provided a narrative report on April 6, 2009, wherein he noted that plaintiff

has been diagnosed with major depressive disorder, anxiety disorder, not otherwise specified,

10

cannabis dependence-full remission, and cocaine dependence - full remission. Dr. Anaya

described plaintiff's prognosis as guarded, noting that while plaintiff has learned and

implemented new coping skills, he still suffers from severe depression that has led to increased

levels of suicidal ideation in recent months. (Tr. 695). Dr. Anaya's narrative assessment further

stated:

> Currently, Mr. Anderson reports and exhibits difficulties paying attention, making
> decisions, and coping with stress. Consistent with the diagnosis of Major
> Depressive Disorder, his concentration is impaired and he can be forgetful,
> missing appointments and other appointment despite being reminded. His
> impaired concentration has also made it difficult to learn new skills, such as
> operating a new cell phone. Stressors tend to worsen his depressed mood and
> increase feelings of worthlessness and can increase thoughts of death or dying.
> Often with Major Depressive Disorder, clients will experience low energy and
> motivation. Mr. Anderson reports and exhibits low energy and motivation, and
> occasionally cannot motive himself to complete daily hygiene tasks. . . .

*Id.*

## OPINION

Plaintiff assigns three errors in this case: (1) the ALJ erred in his analysis of the treating

physician's opinion and erred in formulating plaintiff's mental residual functional capacity; (2)

the ALJ erred in evaluating plaintiff's credibility and subjective complaints with respect to his

mental impairments; and (3) the ALJ committed various vocational errors. For the reasons that

follow, the Court finds the ALJ's decision is not supported by substantial evidence and should be

reversed.

In formulating plaintiff's RFC, the ALJ stated that he gave significant weight to the

assessments of Dr. Anaya. (Tr. 19). Although the ALJ explicitly noted Dr. Anaya's findings

regarding plaintiff's "poor abilities" to deal with work stresses, maintain attention and

11

concentration, and understand, remember and carry out complex job instructions, he concluded that none of those categories would be required in the unskilled work set forth in the residual functional capacity finding, and therefore did not include such limitations in his RFC assessment. (Tr. 19). The ALJ further noted that the April 6, 2009 Counseling Center's narrative "assessment is generally consistent with this." *Id.* The Court determines, however, that in making this finding, the ALJ failed to follow Social Security regulations and Sixth Circuit law in evaluating Dr. Anaya's opinion and in formulating plaintiff's RFC.

The Sixth Circuit has recently reaffirmed the long-standing principle that the "ALJ 'must give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakely v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2)). When the ALJ declines to give controlling weight to a treating physician's assessment, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakely*, 581 F.3d at 406.

In accordance with this rule, the ALJ must give "good reasons" for the ultimate weight afforded the treating physician opinion, based on the evidence in the record, and the reasons must be sufficiently specific to enable meaningful review of the ALJ's decision. *Blakely v. Commissioner*, 581 F.3d 399, 406407 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2); Social Security Ruling 96-2p, 1996 WL 374188, at *5; *Wilson*, 378 F.3d at 544). The ALJ's failure to

adequately explain the reasons for the weight given a treating physician's opinion "*denotes a lack of substantial evidence*, even where the conclusion of the ALJ may be justified based upon the record." *Blakely*, 581 F.3d at 407 (emphasis in the original) (quoting *Rogers v. Commissioner*, 486 F.3d 234, 243 (6th Cir. 2007)).

In this case, the ALJ committed an error of law when he failed to evaluate Dr. Anaya's assessment in accordance with Sixth Circuit precedent and Social Security regulations and give "good reasons" for rejecting the treating psychiatrist's opinion. Here, it is unclear from the ALJ's decision if he accepted or rejected Dr. Anaya's findings relating to plaintiff's poor abilities to deal with work stresses, maintain attention and concentration, and understand, remember and carry out complex job instructions. The ALJ's statement that none of those limitations "would be required in the unskilled work set out in the residual functional capacity" (Tr. 19) does not clearly indicate whether such limitations were in fact rejected, and if so, the rationale for that determination. The fact that such limitations may not affect a claimant's ability to perform unskilled work as outlined in his RFC assessment is not a proper basis for rejecting a treating physician's findings under the Social Security Regulations. *See* 20 C.F.R. § 404.1527(d)(2) (providing a number of factors which must be considered if the treating source opinion is not given controlling weight including the length of the treatment relationship, the nature and the extent of the treatment relationship, the supportability of the opinion, its consistency with the record as a whole, the specialization of the treating source, and other factors). Thus, although the ALJ stated that he gave "significant weight" to Dr. Anaya's opinion in formulating plaintiff's RFC, the ALJ failed to give "good reasons" for rejecting and/or omitting certain limitations

13

provided by Dr. Anaya to enable this Court to conduct any meaningful review of the decision. *Wilson*, 378 F.3d at 544.

More importantly, applying the requisite factors, it appears that Dr. Anaya's full assessment should have been afforded great weight and incorporated into plaintiff's RFC assessment. The Social Security regulations recognize the need for longitudinal evidence in mental impairment cases and that an individual's level of functioning may vary considerably over time. 20 C.F.R. Pt. 404, Subpt. P, App. 1 (D)(2). Since the level of functioning at any specific time may seem relatively adequate or, conversely, rather poor, proper evaluation of plaintiff's mental impairments must take into account variations in levels of functioning in determining the severity of his impairments over time. 20 C.F.R. Pt. 404, Subpt. P, App. 1 (D)(2). The record here indicates that plaintiff began individual mental health therapy at the Clermont County Counseling Center in December 2006 with Susannah Coaston, MA, PC, and Dr. Anaya, his psychiatrist, who prescribed medication for plaintiff's depressive symptoms in conjunction with his therapy sessions. The record contains three years-worth of progress notes from the Counseling Center detailing plaintiff's therapy sessions and his prescription history, and includes several clinical assessments of plaintiff's mental health. (Tr. 370-470). Based on these counseling sessions and his individual assessments, Dr. Anaya rated plaintiff's ability to deal with work stresses and to maintain concentration and attention as "poor." (Tr. 475).

The only seemingly contrary evidence is from the consultative psychologist, Dr. Seifert, who found plaintiff to be "mildly" limited in his ability to maintaining concentration and attention and "moderately" limited in his ability to withstand the stress and pressures associated with day-to-day work activity. (Tr. 209, 297). Yet, Dr. Seifert examined plaintiff on only two

occasions, in July 2006 and December 2006, and did not have the benefit of Dr. Anaya's

counseling records which post-date those exams. Dr. Anaya was the physician who was most

familiar with plaintiff's condition over an extended period of time and was in the best position to

assess plaintiff's current and predicted functioning, especially when that opinion is premised on

three-years worth of clinical data. Under these circumstances, greater deference is due to the

opinion of the treating psychiatrist, Dr. Anaya, over that of the two-time consulting psychologist.

Thus, Dr. Seifert's opinion does not provide substantial evidence for rejecting the more limiting

opinion of the treating psychiatrist. *See Shelman*, 821 F.2d at 321; *Harris v. Heckler*, 756 F.2d

431, 435 (6th Cir. 1985).

The ALJ's apparent rejection of Dr. Anaya's assessment relating to plaintiff's poor ability

to deal with work stresses and poor ability to maintain concentration and attention is inconsistent

with the legal standards applicable for determining the weight to a treating physician's opinion

and lacks substantial support in the record. *Blakely*, 581 F.3d at 407. Although the ALJ was not

bound by Dr. Anaya's opinion, the ALJ was obligated to articulate "good reasons" based on the

evidence of record for not giving weight to the treating physician's entire opinion. *Wilson*, 378

F.3d at 544. He failed to do so in this case. Accordingly, the ALJ's decision is not supported by

substantial evidence and should be reversed.

Plaintiff's second assignment of error asserts that the ALJ erred in evaluating plaintiff's

pain and credibility with respect to his depression and anxiety in accordance with Social Security

Ruling 96-7p. SSR 96-7p provides in part:

> The reasons for the credibility finding must be grounded in the evidence and
> articulated in the determination or decision. It is not sufficient to make a
> conclusory statement that 'the individual's allegations have been considered' or

that 'the allegations are (or are not) credible.' It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p.

The ALJ's credibility decision must also include consideration of the following factors: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *See* 20 C.F.R. §§ 404.1529(c) and 416.929(c); SSR 96-7p.

Here, plaintiff testified that he has "deep depression" and paranoia. (Tr. 725). He further testified that he does not sleep well, has trouble concentrating, and has memory problems. (Tr. 728). Plaintiff testified that his mind races and he has crying spells. (Tr. 728, 729). Plaintiff also stated that he has thoughts of suicide and generally stays in his father's basement most of the time. (Tr. 729, 732).

The ALJ recited the requisite factors in SSR 96-7p and found plaintiff's subjective complaints are not credible to the extent they are inconsistent with his RFC finding. In support

16

of his credibility finding, the ALJ noted that plaintiff's allegations regarding his drug use are not

consistent and that the record shows evidence of drug-seeking behavior. The ALJ further noted

that there is no credible opinion by a treating or examining physician fully supporting plaintiff's

alleged limitations. (Tr. 18).

The ALJ's credibility finding is without substantial support in the record. In support of

his finding relating to plaintiff's drug-seeking behavior, the ALJ cited to a single discharge

summary from April 2005. Furthermore, although the ALJ discounted plaintiff's credibility

based on his inconsistent statements regarding his drug use, he also found that plaintiff's

cannabis and cocaine dependence were not severe impairments because for much of the relevant

time period both of these impairments were either in full or partial remission. (Tr. 15).

Moreover, and contrary to the ALJ's finding, the record reflects that plaintiff's three-year

treatment history for depression and anxiety corroborates plaintiff's testimony. *See, e.g.*, Tr. 390

(7/31/08–broke down crying; reports hallucinating; agreed to go to hospital if suicidal ideation

increased; appears to be decompensating); Tr. 391 (7/21/08–rocking; extremely agitated); Tr. 394

(7/11/08–very depressed; having trouble staying awake; falling asleep during session; appears to

be decompensating quickly as physical condition deteriorates); Tr. 399 (suicidal ideation); Tr.

2/4/08 (2/4/08–agitated; sweaty; increase in anxiety; decrease in sleep; increase in depression);

Tr. 405 (1/14/08–feeling more anxious; very antsy); Tr. 406 (feeling more depressed and shaky);

Tr. 409 (11/30/07–edgy and upset); Tr. 415 (9/21/07–not sleeping; edgy; irritable; suicidal

ideation; feeling like people are watching him); Tr. 416 (9/7/07–appeared stressed; problems

with racing thoughts and sleep); Tr. 417 (8/24/07–appears very agitated); Tr. 439 (3/12/07–still

not sleeping; appeared more edgy/anxious than usual; felt very depressed); Tr. 442 (suicidal

ideation; panic attacks and agoraphobia; still not able to sleep); Tr. 445 (1/22/07–appeared more

distraught; suicidal ideation; anxiety; no sleep).

Accordingly, the ALJ's selective citations to the medical records do not fairly portray

plaintiff's medical state for the relevant time period. Thus, they do not constitute substantial

evidence to support his credibility determination. Although the ALJ was not bound to accept

plaintiff's statements about his mental limitations, he was obligated to follow the Social Security

Rules and Regulations and the law of this Circuit in assessing plaintiff's credibility. He failed to

do so in this case. Plaintiff's second assignment of error should be sustained.

Plaintiff's final assignment of error asserts that the ALJ's Step 5 finding is without

substantial evidentiary support in the record. Plaintiff contends the ALJ erred by relying on the

vocational expert's responses to an incomplete hypothetical question because it failed to include

the limitations imposed by Dr. Anaya, the treating psychiatrist.

At Step 5 of the sequential evaluation process, the burden shifts to the Commissioner "to

identify a significant number of jobs in the economy that accommodate the claimant's residual

functional capacity (determined at step four) and vocational profile." *Jones v. Commissioner of

Social Sec.,* 336 F.3d 469, 474 (6th Cir. 2003). The Commissioner may meet his burden through

reliance on a vocation expert's testimony in response to a hypothetical question. To constitute

substantial evidence in support of the Commissioner's burden, the hypothetical question posed to

the vocational expert must accurately reflect the claimant's physical and mental limitations. *See

Ealy v. Commissioner of Social Security*, 594 F.3d 504, 516 (6th Cir. 2010); *Howard v.

Commissioner of Soc. Sec.,* 276 F.3d 235, 241 (6th Cir. 2002); *Varley v. Secretary of Health &

Human Services*, 820 F.2d 777, 779 (6th Cir. 1987).

18

Here, the ALJ's hypothetical question to the vocational expert included the limitations that the individual perform only simple tasks and carry out short and simple instructions; not be required to work with the general public or have more than occasional interaction with co-workers or supervisors; have no more than ordinary and routine changes in work setting or duties; and make no more than simple work-related decisions. (Tr. 742). In response, the vocational expert testified that an individual with those limitations could performed unskilled light jobs as an assembler, packer and light-level cleaner and unskilled sedentary jobs as a bench assembler and hand packer. (Tr. 742-43). The ALJ's hypothetical omitted the limitations imposed by Dr. Anaya that plaintiff had a "poor"[4] ability to deal with work stresses, and to maintain concentration and attention. When questioned by plaintiff's counsel, the vocational expert testified that if the ALJ were to accept Dr. Anaya's RFC assessment, it would affect plaintiff's ability to perform the assembler and packer jobs the VE identified as those jobs require consistent pace and include production requirements. (Tr. 744).

The hypothetical propounded by the ALJ failed to include the limitations imposed by Dr. Anaya and thus failed to accurately describe plaintiff's mental limitations. As explained above, the ALJ's RFC assessment which fails to include Dr. Anaya's limitations is not supported by substantial evidence. Therefore, the ALJ's failure to include these limitation in his hypothetical question to the vocational expert was also in error.[5] *See White v. Commissioner of Social Sec.*,

---

[4] "Poor" was defined as "ability to function in this area is seriously limited, but not precluded." (Tr. 475).

[5] The Commissioner asserts that the VE only testified that Dr. Anaya's limitations would "affect" plaintiff's ability to perform the identified jobs, and not "preclude" the performance of those jobs. The relevant issue, however, is whether the ALJ's hypothetical question to the VE accurately portrayed plaintiff's impairments and limitations. *Varley,* 820 F.2d at 779. The ALJ's hypothetical limiting plaintiff to simple, unskilled, routine jobs did not sufficiently account for plaintiff's poor abilities to deal with work stresses and to maintain concentration and attention. Thus, the Commissioner's argument is misplaced.

312 Fed. Appx. 779, 789 (6th Cir. 2009) (ALJ erred in relying on answer to hypothetical question because it simply restated residual functional capacity which did not accurately portray claimant's physical and mental impairments).[6]  Because the ALJ's hypothetical question failed to accurately portray plaintiff's mental impairments, the vocational expert's testimony in response thereto does not constitute substantial evidence that plaintiff could perform the jobs identified by the VE.  Therefore, plaintiff's third assignment of error should be sustained.

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the Court notes that vocational errors generally require a remand for further proceedings under Sentence Four of 42 U.S.C. § 405(g).  *See Ealy*, 594 F.3d at 517; *Renn*, 2010 WL 3365944, at *6.  The VE's testimony which incorporated Dr. Anaya's assessment was incomplete as it was directed towards only the bench assembler and packer jobs.  (Tr. 744).  In addition, the current record does not adequately establish plaintiff's entitlement to benefits as of his alleged 2003 onset date in light of the medical evidence showing a significant

---

[6]The Court notes that the Sixth Circuit recently held that a hypothetical question limiting the claimant to simple, unskilled, routine jobs did not sufficiently account for moderate deficiencies in concentration, persistence, and pace. *Ealy v. Commissioner of Soc. Sec.*, 594 F.3d 504, 516-17 (6th Cir. 2010) (citing *Edwards v. Barnhart*, 383 F. Supp.2d 920, 930-31 (E.D. Mich. 2005) (hypothetical limiting claimant to "jobs entailing no more than simple, routine, unskilled work" not adequate to convey moderate limitation in ability to concentrate, persist, and keep pace) ("Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job."); *Whack v. Astrue*, No. 06-4917, 2008 WL 509210, at *8 (E.D. Pa. 2008) (unpublished) (citing cases for the proposition that hypothetical restrictions of "simple" or "low-stress" work do not sufficiently incorporate the claimant's medically established limitations where claimant has moderate deficiencies in concentration, persistence or pace)). Likewise, this Court has also recognized that where the ALJ's hypothetical failed to include the plaintiff's moderate deficits in memory, attention, and concentration, the vocational expert's testimony does not constitute substantial evidence that the plaintiff can perform her past relevant work. *See Renn v. Commissioner of Social Sec.*, Case No. 1:09-cv-319, 2010 WL 3365944 (S.D. Ohio August 24, 2010) (Beckwith, J.). Although Dr. Anaya described plaintiff's ability to maintain attention and concentration and to deal with job stresses as "poor," the undersigned believes the *Ealy* rationale would apply equally to abilities rated as "poor." The Court also notes that the state agency psychologist found plaintiff was "moderately" limited in his ability to maintain concentration and attention and to perform at a consistent pace during a normal work-week (Tr. 200-201), lending further support to the inadequacy of the ALJ's hypothetical.

20

deterioration of plaintiff's mental condition in 2006. *Faucher,* 17 F.3d at 176. Accordingly, this matter should be remanded for further proceedings, including reconsideration of plaintiff's RFC assessment and vocational considerations consistent with this decision.

### IT IS THEREFORE RECOMMENDED THAT:

This case be REVERSED and REMANDED for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: 1/4/2010

Karen L. Litkovitz
United States Magistrate Judge

21

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

JOHN R. ANDERSON,                     Case No. 1:09-cv-732
    Plaintiff                     Barrett, J.
                                         Litkovitz, M.J.

    vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

22